IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIE ANNETTE KENNEDY,

        Plaintiff,

vs.                                  Case No. 11-1343-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 24, 2010, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 12-23). Plaintiff alleges that she has been disabled since April 1, 2009 (R. at 12). Plaintiff is insured for disability insurance benefits through December 31, 2013 (R. at 14). At step one, the

ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 14).  At step two, the ALJ found that plaintiff had the following severe impairments: hydrocephalus, tension headaches, an affective disorder, a personality disorder, and an anxiety disorder (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15)).  After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 21).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 21-22).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22-23).

**III.  Did the ALJ err in his consideration of the medical evidence regarding multiple sclerosis?**

The only issue raised by the plaintiff is that the ALJ erred by ignoring Dr. Zhao's diagnosis of multiple sclerosis and its related effects on claimant's ability to work (Doc. 12 at 19-21).  The ALJ made the following findings regarding plaintiff's assertion that she has multiple sclerosis:

> The claimant alleges that she has multiple sclerosis (MS) (Exh. 2E).  An MRI of the brain, dated June 15, 2010, revealed intense dural enhancement with moderately extensive white matter changes.  The radiologist noted

>        that this could indicate demyelination such
>        as MS (Exh. 2F/10).  Taijun Zhao, M.D., a
>        neurologist, opined on July 8, 2009, that
>        the claimant's clinical presentation raised
>        a question of MS.  However, Dr. Zhao did not
>        make a formal diagnosis and referred the
>        claimant for a second opinion (Exh. 2F/2).
>        In March 2010, Sharon Lynch, M.D. a
>        neurologist at the University of Kansas
>        Medical Center performed this second
>        opinion.  Dr. Lynch's neurological
>        examination was normal.  Dr. Lynch opined
>        that she doubted that the claimant has MS
>        (Ex. 12F/2-6).  Therefore, the undersigned
>        finds that the claimant does not have a
>        medically determinable impairment for MS.

(R. at 14-15).

The ALJ's findings are consistent with the medical evidence.  MRI test results from June 15, 2009 include the following statement: "Moderately extensive white matter changes, and although nonspecific may indicate demyelination such as seen with  multiple sclerosis" (R. at 409).  On July 8, 2009, the medical records of Dr. Zhao note that testing "raise a question of MS" (R. at 401), and that he "need[ed] to be concerned about MS type of change" (R. at 402).  Thus, he referred plaintiff to the MS center at KU (R. at 401).  On March 10, 2010, Dr. Lynch from the KU Medical Center evaluated the plaintiff (R. at 513-518).  Her medical records state the following "doubt MS" (R. at 517).  On April 15, 2010, Dr. Siemsen, a non-examining physician, performed a physical RFC assessment after evaluating the medical records.  Dr. Siemsen noted that the records from KU

Medical Center stated that the possible MS diagnosis was not confirmed and that the doctor indicated that it was probably not MS (R. at 527). Dr. Siemsen concluded his report as follows:

> MDI [medically determinable impairment]- possible MS, alleged severity is not fully credible as there is no significant neurological findings other than mild peripheral neuropathy.

(R. at 527).

The court finds that the ALJ's determination that plaintiff does not have a medically determinable impairment for MS is supported by the medical evidence. Although physicians raised the question of whether she had MS, it was never diagnosed by any physician, and no medical source opined that MS or the possibility of MS would result in limitations other than those set out in the ALJ's RFC findings, which were based on assessments by Dr. Kovach (R. at 432-435), Dr. Fantz and Dr. Blum (R. at 451-453, 437, 447, 449, 529), and Dr. Siemsen (R. at 520-527) (R. at 20-21). Substantial evidence supports the ALJ's RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 4th day of December, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge